THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS CLANKIE, Defendant-Appellant.

Second District No. 2—85—0840

Opinion filed March 31, 1987.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers and Virginia M. Ashley, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Thomas Clankie, was charged by three separate indictments with three counts of residential burglary in that he, knowingly and without authority, entered the dwelling place of another with the intent to commit therein a theft in violation of section 19—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 19—3). Jury verdicts were returned finding him guilty as to counts I and III, not guilty as to count II. Defendant's motion for a new trial was granted, and the cause was set for retrial. On April 8, 1985, a fourth count of residential burglary was filed by information. A guilty verdict was returned by the jury on count IV, and defendant was found not guilty on the previously charged counts. Judgment was entered on the verdict, and an eight-year term of imprisonment was imposed.

Defendant raises three issues on appeal: (1) whether defendant's sixth amendment right to counsel was violated by the presentation to the jury of a wiretap tape which was made by the State between defendant's first and second trials; (2) whether defendant was deprived of a fair trial by the trial court's denial of impeachment evidence of a telephone conversation between a State's key witness and an assistant State's Attorney taped by a third party; and (3) whether the defendant's sentence constituted an abuse of discretion by the trial court.

This appeal arose from alleged burglaries committed by defendant and Frank Boeck. Boeck was staying in defendant's home with his girlfriend Debra Schreck and their son, Dustin. Boeck sometimes assisted defendant on his paper route. The J. F. McNeal residence was on defendant's route. Both defendant and Boeck were aware that the home was unoccupied. The owner had cancer and was staying in Mt. Morris to receive care for his illness.

A grand jury indicted defendant on October 23, 1984, alleging defendant committed three residential burglaries against J. F. McNeal's house on June 11 (count I), June 13 (count II), and June 14, 1984 (count III). The cause proceeded to a jury trial, and on November 9, 1984, defendant was found guilty on two counts and not guilty on the June 13 charge.

Defendant retained a new attorney, who filed a motion for a new trial on December 6, 1984, alleging, among other things, a conflict of interest between defendant and his former counsel, George Enstrom.

Defendant's motion was granted.

On March 7 and March 18, 1985, before the new trial on counts I and III, a court-ordered wiretap surveillance was conducted in defendant's home. Debra Schreck, a defense witness at the first trial, agreed to wear a recording device during conversations with defendant. Previously, she had approached the police and told them she wanted to tell the truth about the first trial, and she had agreed to assist them in a continuing investigation. Defendant revealed on the tapes, among other things, that he burglarized J. F. McNeal's house on June 27, 1984. Thereafter, count IV was added by information, charging defendant with residential burglary of the McNeal home on June 27, 1984.

A pretrial motion to suppress the wiretap recordings was made asserting the surveillance violated defendant's sixth amendment right to counsel. Defendant alleged that the June 27 charge, referred to as count IV, was directly related to the previously indicted charges and therefore "suffers from the same constitutional infirmity." The court granted the motion as to counts I and III and ultimately denied the motion as to count IV. The wiretap tapes of conversations between Debra Schreck and defendant were presented to the jury in its entirety at the end of the State's case in chief.

On August 1, 1984, Boeck called the Ogle County State's Attorney's office from defendant's home. Debra Schreck had purchased a phone with a recording device attached to it. At that time she was living in defendant's home, and Boeck had moved out. She testified that she bought the phone because Boeck had been making harassing phone calls to her and she wanted proof of the calls for any action against Boeck. The call related to defendant's alleged claim that Boeck had committed perjury at the first trial and that defendant did not have any part in the burglaries.

Defendant attempted to admit the tape of Boeck's call to impeach Boeck's credibility at the second trial because Boeck had testified that he and defendant burglarized the McNeal home, but could not remember the taped phone conversation. The trial court denied defendant's motion, citing section 14—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 14—5), which prohibits the admission of illegally obtained eavesdrop tapes in any proceeding.

Other evidence admitted at the trial will be discussed in more detail as it is relevant to the disposition of this appeal.

The jury returned a guilty verdict as to count IV, the June 27 charge, and not guilty verdicts as to counts I and III. Defendant's motions for judgment notwithstanding the verdict and for a new trial

were denied on October 15, 1985. The court sentenced defendant to an eight-year term of incarceration.

Defendant contends that his right to counsel was violated when the State wiretapped certain conversations between his first and second trials under *Massiah v. United States* (1964), 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199, and *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477.

In *Massiah*, the defendant was indicted for violating a Federal narcotics law. He retained counsel, pleaded not guilty, and was released on bail. While free on bail, a Federal agent surreptitiously listened to incriminating statements made by the defendant. Evidence of these statements was introduced against defendant at his trial. The Supreme Court held that once an indictment has been brought against a defendant, the right to counsel attaches and, therefore, statements obtained from the defendant without the benefit of counsel are inadmissible at the defendant's trial on those charges. *Massiah v. United States* (1964), 377 U.S. 201, 206-07, 12 L. Ed. 2d 246, 250-51, 84 S. Ct. 1199, 1203.

The right to counsel which attaches when formal proceedings are brought under *Massiah* was more definitively explored by the Supreme Court in *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477. In that case, an indictment was brought charging the defendant and Colson, a codefendant, with four counts of theft by receiving automotive vehicles and parts. Colson met with the police and confessed to participating in the crime and agreed to testify against the defendant and cooperate with the prosecution of the defendant on the pending charge if no further charges were brought against Colson. He also consented to having a recording device placed on his telephone to record any calls from the defendant. Having heard that Colson and the defendant were going to meet to plan the defense strategy for their upcoming trial, police placed a wire transmitter on Colson. Defendant made incriminating statements to Colson at this meeting. After Colson's role as informant was revealed, the State had the pending indictments dismissed and obtained seven new indictments against defendant; the original charges were realleged, and burglary, arson, and three more theft charges were added. The cause proceeded to trial on three of the seven indictments, at which defendant was found guilty of burglary and theft and not guilty on the arson charge. The Supreme Court held that defendant's sixth amendment right to the assistance of counsel was violated by the admission at trial of incriminating statements made by him to Colson after indictment. 474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 488.

■■ The court focused its decisions on the right to assistance of counsel at every stage of the proceedings against a defendant, and that the assistance of counsel cannot be limited to participation at trial. The court concluded that this was necessary because the government, after the initiation of adversary criminal proceedings, has committed itself to prosecute, and the adverse positions of government and defendant have solidified. 474 U.S. 159, 170, 88 L. Ed. 2d 481, 492, 106 S. Ct. 477, 484.

■ The court stated that once the right to counsel has attached, the State must do more than simply not prevent the accused from obtaining the assistance of counsel. The State has an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel. 474 U.S. 159, 170-71, 88 L. Ed. 2d 481, 492-93, 106 S. Ct. 477, 485.

Applying this principle to the case, the court focused on the fact that the police knew, as they must have known from the phone calls, that defendant and Colson were meeting for the express purpose of discussing the pending charges and planning a defense for the trial. 474 U.S. 159, 176-77, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 488.

However, the court did not extend its holding that the right to counsel attached whenever a defendant has been indicted. "The police have an interest in the thorough investigation of crimes for which formal charges have already been filed. They also have an interest in investigating new or additional crimes. Investigations of either type of crime may require surveillance of individuals already under indictment. *** [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Consequently, incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel." 474 U.S. 159, 179-80, 88 L. Ed. 2d 481, 498-99, 106 S. Ct. 477, 489-90.

Several cases decided before *Moulton* have held that the right to counsel only attached to those adversary proceedings that have been commenced and not to other offenses. One significant case is *Hoffa v. United States* (1966), 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408. In that case, defendant was on trial for violating a provision of the Taft-Hartley Act. During that trial, known as the Test Fleet trial, a

Teamsters Union official made repeated visits to defendant's hotel suite. He, in turn, reported conversations he had had with defendant to a Federal agent which disclosed defendant's endeavors to bribe the jury members of the Test Fleet trial. The Test Fleet trial ended with a hung jury. The Supreme Court held that post-indictment statements obtained by a government informant relating to the commission of a quite separate offense were properly admitted at the subsequent trial for the separate crime. 385 U.S. 293, 308, 17 L. Ed. 2d 374, 87 S. Ct. 408, 416.

In another case, DEA agents, while legally searching for defendant's records relating to distribution and receipt of controlled substances, discovered over $21,000 in cash along with records of controlled substances purchases. The DEA informed the IRS of the seizure of the currency. However, because the DEA indicted defendants, the IRS did not seek indictment. After the court dismissed the DEA charges without prejudice against defendants, the IRS began its investigation, and, thereafter, defendants were indicted, tried, and convicted of evading Federal income taxes. On appeal, the court did not need to discuss whether defendant's *Massiah* rights terminated with the dismissal of the DEA indictment as defendant's argument failed because the subsequent indictment and conviction involved an entirely different offense. *United States v. Chu* (7th Cir. 1985), 779 F.2d 356, 367.

Additionally, in *United States v. Grego* (8th Cir. 1984), 724 F.2d 701, recorded conversations made after an indictment on a charge of importation of marijuana were properly admissible at a subsequent trial for conspiracy to possess marijuana. Although both indictments involved marijuana, the acts on which they were based were separate and distinct and did not amount to a single criminal offense. The court stated: "*Massiah* is limited to holding that incriminating statements made by indicted defendants out of the presence of counsel may not be admitted at trial to prove the charge in the pending indictment." 724 F.2d 701, 703; see also *United States v. Lisenby* (11th Cir. 1983), 716 F.2d 1355, 1359.

Defendant maintains that regardless of the fact that he had not yet been indicted on the June 27 charge (count IV), the trial court erred in denying defendant's motion to suppress the recordings relating to the June 27 charge because the new count was intricately related to the previously indicted charges and inseparable for sixth amendment purposes. The State claims the June 27 charge was a separate and distinct burglary to which the right to counsel had not attached. Relying on the analysis of *Massiah* and *Moulton*, the outcome

of this issue, therefore, depends on whether the June 27 charge, for which defendant had not yet been indicted at the time of the surveillance, was sufficiently related to the previously indicted charges which were still pending.

Contrary to defendant's assertion, the State did acknowledge that count IV could be interpreted as a separate matter and should be a separate trial. However, for purposes of avoiding a preliminary hearing, the State argued that the charge was related to the initial charges in terms of its being an "ongoing activity" and that judicial economy warranted a single trial. Subsequently, the trial court granted defendant's request for a preliminary hearing on count IV, stating that it was not convinced that the June 27 burglary arose from the same transaction or conduct of defendant as the previously indicted burglaries within the meaning of section 111—2(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 111—2(f)).

There are no State or Federal cases cited by either party, and we have not found any which are squarely on point. Obviously, the alleged burglaries that occurred in this case involved the same house, the same owner, and the same time span, matters which arose out of the same activities of defendant.

One case based on the double jeopardy clause may lend support by analogy. *People v. Holloway* (1982), 92 Ill. 2d 381, cited by the State, involved a defendant who was charged with the alleged burglary of a building in possession of Charles June. Defendant was convicted and he appealed. The appellate court reversed because Charles June had no possessory interest in the burglarized portion of the building. Defendant was reindicted for the same offense, but the indictment listed Arementa Ervin as having the possessory interest. On appeal from the dismissal of the indictment, the supreme court held that the State's Attorney was not barred by the double jeopardy clause or section 3—4(a)(1) of the Criminal Code of 1961 from bringing prosecution on the second indictment. (92 Ill. 2d 381, 387.) The court came to this conclusion based on two factors. The defendant failed to recognize that the State's Attorney did not have any knowledge that any other offense could or should have been charged when defendant was first indicted. Further, while the offense charged in the second indictment did involve the same offense, the prosecution on the second indictment required proof of a fact not required on the other prosecution—proof of a different possessory interest. 92 Ill. 2d 381, 385.

Similarly, proof of defendant's alleged burglary on June 27 requires proof of an element not required on the other indictments—

proof of defendant's intent. See Ill. Rev. Stat. 1983, ch. 38, par. 19—3; *People v. Morrison* (1983), 114 Ill. App. 3d 828, 829-30 (in order to sustain residential burglary conviction, the State must prove defendant possessed the intent to commit the theft at time of his unauthorized entry).

■ Here, too, there is nothing in the record to indicate that the State's Attorney had any knowledge that the June 27 offense could or should have been charged when defendant was first indicted. Nor is there any indication of a knowing exploitation by the State of an opportunity to confront the accused without counsel being present or that the State must have known that its agent was likely to obtain incriminating statements from the accused as to another burglary. See *Maine v. Moulton* (1985), 474 U.S. 159, 176 n.12, 88 L. Ed. 2d 481, 496 n.12, 106 S. Ct. 477, 487 n.12.

Defendant argues, alternatively, if the June 27 charge of residential burglary is deemed a separate and distinct offense from the original charges, it is clear that defendant's conviction must fail since his admission on the wiretap tapes, without any corroborating evidence, is insufficient to sustain a guilty verdict.

Defendant relies on *People v. Lambert* (1984), 104 Ill. 2d 375, 378-79, a case that stands for the proposition that a *corpus delicti* cannot be proved by the defendant's confession alone; there must be some other independent corroborating evidence tending to establish that a crime occurred.

Defendant believes there is no independent evidence because Frank Boeck testified only as to the previously indicted charges: June 11, June 13, and June 14. At no time was any testimony presented or exhibits offered as to an additional burglary of the McNeal home.

Although the State does not respond to this argument, a thorough search of the record reveals that there was corroborating evidence of the June 27 burglary. Evelyn Brown, J. F. McNeal's daughter, testified that a stereo and television were missing from her father's home. Debra Schreck, who lived in defendant's home with Boeck and their son, Dustin, at the time of the burglary, testified that defendant told her, when she was taping the conversation for the State which was admitted at trial, that he and Boeck went into the McNeal house and carried out the stereo and the television on the 27th or the 28th of June. Debra further testified that she saw the items the day after they took them and that she knew they came from the McNeal home because defendant and Boeck were talking about it. Moreover, Georgia Clankie, defendant's mother, brought a stereo and television to Phil's Auction Service in Rockford on July 2, 1984. Phillip Van Husch,

the owner of Phil's Auction Service, testified that he remembered the lady who brought them in to be auctioned and his records showed that defendant was listed for the "pay off" on the merchandise.

Defendant contends that the trial court's reading of the eavesdropping statute (Ill. Rev. Stat. 1983, ch. 38, par. 14—1 *et seq.*) kept very probative, highly damaging impeachment evidence from the jury, contributing to the tainted verdict. Defendant argues that even though the State could not introduce an illegally obtained tape, defendant should have been able to introduce the tape made by Debra Schreck to impeach Boeck.

Section 14—2 defines the offense of eavesdropping:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all the parties to such conversation or (2) with the consent of any one party to such conversation and in accordance with Article 108A of the 'Code of Criminal Procedure of 1963' *** or

(b) Uses or divulges, except as authorized by Article 108A *** any information which he knows or reasonably should know was obtained through the use of an eavesdropping device." Ill. Rev. Stat. 1983, ch. 38, par. 14—2.

Section 14—5 provides, in relevant part:

"Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial, *** provided, however, that so much of the contents of an alleged unlawfully intercepted, overheard or recorded conversation as is clearly relevant, as determined as a matter of law by the court in chambers, to the proof of such allegation may be admitted into evidence in any criminal trial or grand jury proceeding brought against any person charged with violating any provision of this Article." Ill. Rev. Stat. 1983, ch. 38, par. 14—5.

Defendant contends that the standing requirements of *Alderman v. United States* (1969), 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961, are applicable to the question of admissibility under the Illinois eavesdropping statute. *Alderman* considered the standards and procedures to be followed in determining whether any of the government's evidence supporting convictions was the product of the government's illegal surveillance to which any of the petitioners were entitled to object. The Supreme Court held that suppression of products of a fourth amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are ag-

grieved solely by the introduction of damaging evidence; co-conspirators and codefendants are accorded no special standing. (394 U.S. 165, 171-72, 22 L. Ed. 2d 176, 185-86, 89 S. Ct. 961, 965.) A fourth amendment violation may be claimed if the person on trial was a party to the conversation or if the accused was the owner of the premises on which the eavesdropping occurred, whether or not he was present or participated in those conversations. 394 U.S. 165, 176, 22 L. Ed. 2d 176, 188, 89 S. Ct. 961, 967-68.

Defendant's reliance on *Alderman* is misplaced. The fourth amendment, unlike the Illinois eavesdropping statute, limits only governmental action. (See *People v. Heflin* (1978), 71 Ill. 2d 525, 539 (constitutional proscription against unreasonable searches and seizures does not apply to searches and seizures conducted by private individuals); *People v. Satek* (1979), 78 Ill. App. 3d 543, 547.) Even within the context of the fourth amendment exclusionary rule, the Supreme Court has stated that the States may extend the rule and provide that illegally seized evidence is inadmissible against anyone for any purpose. (*Alderman v. United States* (1969), 394 U.S. 165, 175, 22 L. Ed. 2d 176, 188, 89 S. Ct. 961, 967-68.) It is clear that the Illinois legislature has chosen to extend the rule and exclude from evidence information unlawfully obtained by anyone through the use of an eavesdropping device. The term "person" has been expressly defined as an individual, public or private corporation, governmental, partnership, or unincorporated association. Ill. Rev. Stat. 1983, ch. 38, par. 2—15.

Any aggrieved person may move to suppress the contents of any unlawfully recorded conversations. (Ill. Rev. Stat. 1983, ch. 38, par. 108A—9.) Section 108A—9, however, merely provides a procedure for suppressing evidence, not admitting such evidence. Further, it seems apparent that the Illinois legislature did not intend fourth amendment standing principles to be applicable because section 14—5 (Ill. Rev. Stat. 1983, ch. 38, par. 14—5) provides that such evidence is generally inadmissible except if used in a criminal trial or grand jury brought against a person charged with the offense of eavesdropping.

Defendant argues that one court has upheld the admission of illegally obtained recordings, recognizing the statutory purpose of the act: to prohibit the use of information obtained from eavesdropping and the subversion of justice which would result if strict compliance were given credence over this intent. In *People v. Winchell* (1986), 140 Ill. App. 3d 244, criminal charges were brought against the defendant after his participation in a sale of stolen calculators to undercover agents was filmed during a "sting" operation established by Illinois and Federal agencies. A videotape of the transaction was

shown to the jury, without sound, while two undercover agents separately testified as to what had occurred. The defendant testified that he had been an innocent companion. He claimed that when the others began discussing money, he told them he had had nothing to do with the stolen property. Over the defendant's objection, the State presented the audio portion of the video tape in rebuttal. The defendant contended on appeal that the trial court committed prejudicial error by permitting the State to present the audio portion of the tape in violation of the statutory proscription against eavesdropping.

Analogizing two Illinois cases, the court concluded that the eavesdropping was carried out by both State and Federal agents, who had complied with Federal law, and since the record was devoid of any collusion to avoid the Illinois requirements, case law required that the tape recording was properly admitted. (140 Ill. App. 3d 244, 246-47.) In *dicta*, the court stated that an additional concern influenced its decision:

> "The statutory provision which prohibits the admission of evidence illegally obtained by eavesdropping [citation] is intended to protect individuals from unwarranted invasions of privacy. Defendant has attempted to invoke that protection for purposes of contradicting facts which the State was prevented from demonstrating in its case in chief. The shield provided by constitutional or statutory safeguards cannot and must not be converted into an opportunity for a defendant to perjure himself impunibly while the prosecution remains shackled by a rule of exclusion." 140 Ill. App. 3d 244, 247.

Similarly, it could be argued that defendant, in the present case, should not remain constrained by a rule of exclusion, especially, as defendant pleads, when that impeachment evidence was a recantation of Boeck's incrimination of defendant. If the State can use eavesdropping evidence to reveal a defendant's perjury, a defendant should be able to use crucial impeachment evidence of a key State's witness. Defendant argues that the exclusionary rule was designed to protect defendants from illegal State action, but here, defendant was not requesting the court's protection, and the action was not government-induced. Thus, defendant argues that the exclusion of the tape goes against its very foundational basis and severely prejudices defendant in the process. Defendant maintains that such a literal reading of the statute without consideration of the principles underlying it hampers the administration of justice.

The *Winchell* case, however, can be distinguished from the present case. In that case, the government conducted the taping in

full compliance with Federal law. Because the government was involved in the taping, the court acknowledged that its decision did not otherwise contravene any of the defendant's constitutional rights since there is no constitutional right to perjury.

Additionally, although the statutory purpose of the eavesdropping statute has been described as increasing the protection of the defendant's rights, the committee comments to the statute (Ill. Ann. Stat., ch. 38, par. 14—1 *et seq.*, Committee Comments, at 581 (Smith-Hurd 1972)) note that the reason for the legislation has been to protect the privacy of the individual and Illinois unqualifiedly prohibits all electronic eavesdropping. *People v. Satek* (1979), 78 Ill. App. 3d 543, 548.

Defendant relies on *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, as authority for the crux of his argument that he has been denied his right to confrontation and a fair trial due to the exclusion of the impeachment evidence. That case held that where a third person orally confessed to a murder, with which the petitioner was charged, to three different friends, under circumstances which bore substantial assurances of trustworthiness, exclusion of the testimony of the persons to whom the oral confessions were made deprived the petitioner of a fair trial. The petitioner was denied an opportunity to subject the third person's repudiation and alibi to cross-examination. He was not allowed to test the witness' recollection, "to probe into the details of his alibi, or to 'sift' his conscience so that the jury might judge for itself whether [the witness'] testimony was worthy of belief." 410 U.S. 284, 295, 35 L. Ed. 2d 297, 308-09, 93 S. Ct. 1038, 1045-46.

■ Here, defendant's ability to cross-examine Frank Boeck was not impeded. He was able to confront him, test his recollection, and sift his conscience so that the jury could judge for itself whether his testimony was worthy of belief. Indeed, it was revealed that Boeck had a grave drinking and drug problem since he was four years of age and that he often would pass out and not be able to recollect his actions. Moreover, defendant also was able to confront the other party to the taped conversation, Assistant State's Attorney Ronald Jacobson. Thus, aside from the consideration of whether or not the taped conversation bore substantial assurances of trustworthiness, under the circumstances and the present law, it does not appear that defendant was truly denied his right to confrontation and a fair trial.

■ Defendant's last issue on appeal centers around his contention that his eight-year sentence is excessive since it does not strike a proper balance between the seriousness of the offense and his potential for rehabilitation.

It is firmly established that the imposition of a sentence is a matter of judicial discretion and that, absent any abuse of that discretion, the sentence of the trial court may not be altered upon review. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) The Unified Code of Corrections gives wide discretion to sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case. (Ill. Rev. Stat. 1983, ch. 38, par. 1001—1—1 *et seq.*; *People v. La Pointe* (1981), 88 Ill. 2d 482, 492.) The judge's sentencing determination depends upon several factors, and by presiding over the trial and sentencing hearing, he is in the best position to make these evaluations and determine the proper sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) A reviewing court does not serve as a sentencing court and will not substitute its judgment for the trial court's judgment merely because of a different attitude toward the balancing of the appropriate factors. *People v. Cox* (1980), 82 Ill. 2d 268, 280; *People v. Rosa* (1982), 111 Ill. App. 3d 384, 392.

New legislation, as cited in defendant's reply brief, no longer punishes persons as Class I felons who break into homes in which no one resides. (Public Act 84—1289, eff. Jan. 1, 1987.) However, as defendant concedes, this amendment was not effective until January 1, 1987, and is not retroactive. Therefore, it does not lessen the degree of punishment under the statute for which defendant was sentenced. Residential burglary is a Class I felony punishable by a term of imprisonment not less than four years and not more than 15 years. Ill. Rev. Stat. 1983, ch. 38, pars. 19—3, 1005—8—1(a)(4).

■ The record of the sentencing hearing reveals that the trial court considered defendant's claims that he committed the offense in order to help Frank Boeck and Debra Schreck pay for their child's support; that burglarizing a house he knew was uninhabited posed less of a serious risk of bodily harm; that defendant had a favorable work record; and that he supported a wife and six children, one child requiring extensive medical care and attention until she died of her illness.

The record also reveals that the trial court considered the particulars of defendant's past criminal record. Between September 16, 1970, and September 13, 1984, defendant had been convicted of 20 separate offenses, including, but not limited to, petty theft, criminal damage to properties, disorderly conduct, traffic violations, battery, aggravated battery, theft, and felony theft. On at least three separate occasions, defendant violated the terms of his probation or periodic imprisonment. Defendant also violated the conditions of his bond for

the instant offense. And, after his indictment in the present case, defendant committed the aggravated battery offense.

In light of the factors presented in mitigation and aggravation and the fact that defendant's sentence was well within the permissible statutory range at the time of sentencing, this court concludes that the trial court considered the appropriate factors and the record reveals no abuse of the court's discretion.

The judgment of the trial court is affirmed.

Affirmed.

HOPF and UNVERZAGT, JJ., concur.